UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION
www.moed.uscourts.gov

| | |
|---|---|
| JOYCE PASLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1128 RWS |
| ) | |
| UNITED AIR LINES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Joyce Pasley worked as a customer service representative for Defendant United Air Lines.  Pasley was fired from her job for violating company ticketing rules.  Pasley filed this lawsuit, under 42 U.S.C. § 1981, alleging that United's action was an act of employment discrimination based on race.  United has moved for summary judgment.  Because Pasley has failed to establish a claim for employment discrimination I will grant United's motion for summary judgment.

### *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact.

Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).[1]

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[2]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's

---

[1] I note that in her brief in opposition to summary judgment Pasley cites to panel opinions of the United States Court of Appeals for the Eighth Circuit for the proposition that summary judgment should sparingly be granted in employment discrimination cases and is not proper in very close cases. The Eighth Circuit, sitting en banc, has rejected applying a more stringent summary judgment standard to employment discrimination cases. See Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8h Cir. 2011)("The panel statements asserting a different standard of review for summary judgment in employment discrimination cases are contrary to Supreme Court precedent.")

[2] See Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 550 (8th Cir. 2005)(applying McDonnell Douglas to a 42 U.S.C. § 1981claim).

action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11.  The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination.  Aucutt, 85 F.3d at 1316.  A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination.  St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times.  Id. at 515-16.  It is not enough to merely discredit defendant's articulated reason for the adverse employment action.  A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination.  Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995).  To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision.  Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Background*

Plaintiff Joyce Pasley, an African American, began working for Defendant United Air Lines in 1987.  In 1988 she transferred positions and became a Customer Service Representative (CSR) at Lambert International Airport in St. Louis, Missouri.  She continued to work as a CSR

until her discharge on October 9, 2008.

As a CSR, Pasley was responsible for assisting customers with flights and ticketing.  For the past ten years Pasley worked primarily as a gate agent, where, among other duties, she was responsible for changing passengers' tickets, changing their flights, and collecting fees for those changes.  Pasley also worked at the ticket counter once or twice a month.  When working at that position Pasley was responsible for booking and changing tickets which would result in a charge to the customer.

As a CSR, Pasley was a member of the International Association of Machinists and Aerospace Workers union (IAMAW).  As a member of the union, Pasley was governed by the Rules of Conduct for IAMAW Represented Employees.  Rule of Conduct No. 2 states that:

> Unauthorized deviation from established rules and procedure when providing travel services for one's self, one's friends, relatives, or co-workers including, but not limited to:
>
>     a) creating a fictitious record or price
>     b) holding seat(s) out of inventory
>     c) refunding of a ticket
>     d) inappropriate waiving of a fare rule or restriction
>     e) inappropriate upgrading of a class of service

A violation of this rule will result in the employee being discharged unless mitigating factors are considered applicable.

United also has other policies which inform employees that while they are allowed to assist friends and family members with their travel needs, the employee must not deviate from the rules regarding pricing, issuance and exchange of tickets, and upgrading class-of-service.

Pasley is friends with a family by the name of Thomas.

On April 3, 2008, Pasley booked and ticketed round-trip travel for the Thomases, a party of four, for travel to Maui. The flight was scheduled to depart from St. Louis on May 11, 2008 and to return on May 19, 2008. Each ticket was issued using $25.00 travel certificates that were provided by Pasley. On May 8, 2008, Pasley changed the dates of travel to leave on August 23, 2008 and return on August 31, 2008. Although the fare was higher for the new travel dates, Pasley issued the new tickets, upgraded the Thomas family to Economy Plus, and failed to charge the Thomases the fare difference or a service fee. The boarding passes were left on the printer and discovered later by another employee who turned them over to a general manager. The tickets were tuned over to the Fraud Department who "zeroed out" the tickets because they were not used for the original travel dates. Pasley later reinstated the tickets for the Thomases.

Pasley's reinstatement of the tickets prompted United to instigate an investigation of Pasley's ticketing practices because reinstating expired tickets is considered a significant event. As the tickets were given an unauthorized upgrade, the Fraud Department removed the upgrade. The night before the trip, Pasley came to the airport (3 hours after the end of her shift) and reinstated the tickets with all of the upgrades, put the Thomases on a wait list for First Class, and checked them in for the flight. Later, on August 23, 2008, after the Thomases had begun their travel, Pasley issued them four upgrade certificates valued at $300.00 each for the return flight. United valued the lost revenue from these transactions at $4,128.00. It is undisputed that Pasley did not obtain the required authorization from a manager or supervisor to waive these fees or restrictions.

During the investigation of these transactions, Pasley was interviewed and admitted going to Maui about the same time as the Thomases but denied vacationing with them. She later

admitted that she traveled and stayed with the Thomases in the condo the Thomases booked and paid for. She also admitted that the had previously stayed with the Thomases in a condo they rented in Orlando, Florida. For the Orlando trip, Pasley also waived airline ticket fees and provided upgrades to the Thomases at no charge. She never reimbursed the Thomases for the expense of her stay at the condos. (See Def.s Resp. to Summ. J. Ex. A pp. 76, 77, and 79)

A further investigation into Pasley's ticketing practices revealed that on May 21, 2007, she booked round-trip airline reservations for two of the Thomases for travel from St. Louis to Maui. Although the tickets had a discounted, restricted fare, on May 24, 2007, Pasley changed the dates of travel and failed to charge the Thomases the difference in fare and the change fee. On June 4, 2007, Pasley changed the return trip without collecting the fare difference or change fee. On June 10, 2007, Pasley issued the two Thomases system-wide upgrade certificates without charging any fee. These certificates at valued at $950.00 each. On June 11, 2007, Pasley upgraded the Thomases to First Class at no cost. On June 23, 2007, the day the Thomases returned to St. Louis, Pasley issued them two more system-wide upgrade certificates at no charge. United valued the loss of revenue from these transactions at approximately $7,442.00. Pasley did not receive authorization from a manager or a supervisor to deviate from United's ticketing practices and fare rules for any of these transactions.

On August 6, 2007, Pasley booked discounted, restricted round-trip airfare for the four Thomases to Orlando (the trip mentioned above). She again performed additional of transactions with these reservations changing the dates of travel without collecting appropriate fees. United valued the loss of revenue from these transactions at approximately $5,132.00. Pasley did not receive the required authorization from a manager or a supervisor to deviate from United's

ticketing practices and fare rules for any of these transactions.

On December 15, 2007, Mr. and Mrs. Fujita, friends of Pasley, flew to Hong Kong on companion tickets[3] provided by Pasley.  For this flight Pasley issued each of the Fujita's system-wide upgrade certificates so they could fly First Class form Chicago to Hong Kong at no additional fare or fee.  These certificates were improperly issued.  United valued the loss of revenue from this transaction at approximately $1,900.00.  Pasley did not receive the required authorization from a manager or a supervisor to deviate from United's ticketing practices and fare rules for any of these transactions.

On August 25, 2008, United concluded its investigation and determined that Pasley violated Rule 2 and recommended that she be discharged.  She was allowed to continue working until she could receive an Investigative Review Hearing.  That hearing was held on October 2, 2008, and was presided over by Michelle Freeman (an African American).  Pasley was represented by the IAMAW and permitted to put on evidence in defense of her actions and/or to seek a lesser form of discipline.  Pasley stated that she felt that she did not need a manager or supervisors permission to waive fees or fare restrictions for friends or family.  At the end of the hearing Freeman concluded that Pasley inappropriately waived fees, inappropriately provided friends with upgrade certificates, inappropriately provided friends with $25.00 off travel certificates, air currency, and economy plus seating, and reinstated closed out tickets, all without ever asking for or receiving the required authorization from any member of management.  Accordingly, Freeman upheld United's decision to terminate Pasley's employment, effective

---

[3] These stand-by tickets are issued to employees to provide to family and friends as part of the employee's travel benefits.

October 9, 2008.  That decision was appealed and, after another hearing, was upheld.

Pasley filed this suit on May 3, 2010.  She asserts an employment discrimination claim, under 42 U.S.C. § 1981, that she was terminated from her job based on her race.  Specifically, she alleges that she was fired for her actions at work while other similarly situated non-black employees were not fired for the same conduct.

United has filed a motion for summary judgment which Pasley opposes.

***Discussion***

*Race discrimination under 42 U.S.C. § 1981*

Pasley's complaint asserts a disparate treatment claim based on race discrimination under 42 U.S.C. § 1981.  Because Pasley does not offer any direct evidence of discrimination her claim will be analyzed under the burden-shifting framework of McDonnell Douglas.  To establish a *prima facie* case for a disparate treatment claim, Pasley must show that: (1) she is a member of a protected class; (2) she was meeting the legitimate expectations as to her duties; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination because similarly situated employees, who were not members of the protected group, were treated differently.  Gilooly v. Missouri Dept. of Health and Senior Services, 421 F.3d 734, 737-739 (8th Cir. 2005).

As an African American, Pasley is a member of a protected class.  It is undisputed that she suffered an adverse employment action, she was fired from her job.  In dispute is whether she was performing her duties to United's expectations and whether a similarly situated employee, not of Pasley's protected class, was treated differently than Pasley for a similar infraction.

In support of her claim of race discrimination, Pasley asserts that: (1) she was fired from

her job for giving airline benefits to friends that she felt were appropriate; and (2) her termination was too harsh because a white co-worker was not fired for the same behavior.

Pasley fails to establish the element of the *prima facie* that she was meeting the legitimate expectations as to her duties. It is undisputed that she provided substantial benefits to friends by changing air travel reservations without collecting the appropriate fees and inappropriately provided vouchers and class upgrades. She was also less than forthcoming during United's investigation when she failed to disclose that she stayed with the Thomases in Maui and Orlando during trips where Pasley had inappropriately changed the Thomases' tickets and issued them vouchers and upgrades. The undisputed evidence establishes that Pasley repeatedly violated United's rules of conduct regarding ticketing, vouchers and upgrades.

Even if Pasley was deemed to be meeting the employment expectations of United she still fails to provide evidence that she was treated differently than employees outside her protected class.

The fourth element of Pasley's *prima facie* case requires her to offer evidence that there were individuals similarly situated in all respects, who were not members of the protected class, who were treated differently for the same work infractions. The individuals used as comparators must have dealt with the same supervisor and have been subject to the same standards as Pasley. Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003).

To establish this prong Pasley asserts that United customer service representative Neil Lamare was a similarly situated white United employee who received more favorable treatment than Pasley for violating the same conduct rules. In support of this contention, Pasley attached a declaration made by Lamare, dated May 26, 2011, that states that he was a colleague of Pasley at

United.  He says that Pasley and he served under the same supervisors from 2002 to 2008.  That on one unspecified occasion he was accused by management of improperly issuing travel benefits to a family member which he did not dispute.  He was not terminated for that action.

United has moved to strike this affidavit.  In support of its motion United points out that the affidavit was drafted almost a month after United had filed its motion for summary judgment (which was filed on the day designated in the case management order as the deadline for such motions).  Although Lamare had been disclosed to United by Pasley as part of her Federal Rule of Civil Procedure 26 disclosures and in responses to interrogatories, she never provided United with an address where he could be located and served with a deposition notice.  United attempted to local Lamare but could not find a good address for him.  United was surprised that after it filed its motion for summary judgment Pasley responded with an affidavit from Lamare.  United asserts that Lamare's affidavit should be stricken under Rule 37(c)(1) based on Pasley's failure to provide an address for Lamare.

Pasley asserts that she did not have an address for Lamare until contacting him by phone after United's motion for summary judgment was filed.  Pasley's counsel states he was unsure that the address Lamare's declaration was sent to for his review and signature was a residential address for Lamare.  Pasley's counsel did not deem it proper to reveal the address to United because it was potentially an invalid address for service of process should United seek to depose Lamare.

Pasley also attempts to defend her failure to disclose Lamare's address by asserting he is a rebuttal witness.  Such an assertion is hallow.  In layman's terms this is called hiding the ball. Lamare is the sole employee who Pasley asserts was treated more favorably than she was for a

violation of conduct rules. As such, he is a key witness to establish Pasley's *prima facie* case of employment discrimination. Pasley had an obligation to provide United with his address as soon as possible especially given the late stage posture of the case and the importance of this witness.

The failure of Pasley to provide United with Lamare's address as soon as it was discovered put United at an unfair disadvantage in this litigation. The Federal Rules of Civil Procedure are in place to level the playing filed of litigation and to prevent trial by ambush. Rule 37(c)(1) provides that if a party fails to provide information or identify a witness as required by Rule 26, the party will not be allowed to use the information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or was harmless. I find that Pasley's failure to provide Lamare's address was not substantially justified nor was it harmless. As a result, I will grant United's motion to strike Lamare's declaration. Without this evidence Pasley fails to establish the fourth element of her prima facie case of discrimination.

Moreover, even if Lamare's declaration were allowed to be used as evidence, it fails to establish that he and Pasley were similarly situated employees who were treated differently for the same conduct at work.

Lamare's declaration states that on one occasion, on some unknown date, he was disciplined for improperly issuing travel benefits to a family member. This vague and ambiguous statement does not reveal any details that would allow a meaningful comparison to United's discipline of Lamare and Pasley. There is, however, at least one clear distinction in that Pasley violated the rules on conduct on at least four occasions while Lamare states that his discipline was for improperly providing travel benefits "on at least one occasion." In addition, Pasley and Lamare were not disciplined by the same supervisors. Based on Lamare's incomplete

declaration, United is left to make the educated guess that the discipline Lamare refers to is an incident on 2004 which is the only incident which may have involved improper benefits to a family member.  This discipline occurred while Lamare was managed by Dennis Rose.  Mr. Rose was not the same manager who disciplined Pasley, that manager was Marion DeMaria.  As a result, I find that Lamare and Pasley were not similarly situated employees.[4]

Based on the foregoing I find that United is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant United Air Lines motion to strike the declaration of Neil Lamare [#39] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant United Air Lines motion for summary judgment [#35] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 9th day of September, 2011.

---

[4] Interestingly, at her interview during United's investigation Pasley asserted that Lamare violated the same rules of conduct for which she was being investigated.  United investigated Lamare and fired him too.